No. 16,657.

GUARDAMONDO *v.* LANGHURST ET AL.
(243 P. [2d] 1039)

Decided April 14, 1952. Rehearing denied May 5, 1952.

Mr. THOMAS F. PHELPS, Mr. DON B. OLIVER, for plaintiff in error.

Mr. PERRY E. WILLIAMS, Mr. V. G. SEAVY, for defendants in error.

*En Banc.*

Mr. Justice Holland delivered the opinion of the court.

On various dates in the spring months of 1944, plaintiff entered into written contracts with all of the defendants with the exception of Richard Roe and Frank Hough, whereby these parties agreed to raise a specified number of acres of popcorn and sell to plaintiff at a fixed price. We will refer to the terms and conditions of the contract more fully hereinafter.

On April 12, 1945, plaintiff filed his complaint for injunctive relief and damages and accounting against all of the defendants with whom he had the written contracts, alleging breach of the contract and threatened breach, and damages from each defendant in the amount of the difference between the contract price and the price for which plaintiff had contracted to sell the popcorn which he had agreed to purchase from defendants. He further alleged that defendant Richard Roe and Frank Hough had confederated, conspired and agreed with the other defendants to avoid performance of their contracts with plaintiff, all to his damage.

All the defendants joined in an answer to the complaint with the exception of A. J. Ahlberg, referred to in the complaint as Richard Roe, and against whom default was entered. The joint answer of defendants contained an admission of each as to the entering into the written contract, but they generally denied all other allegations of the complaint; they further alleged that plaintiff did not carry out his agreement to buy *shelled* popcorn as provided in the contract; that he refused to order delivery between the dates stipulated in the contracts to the place specified and failed to make, or provide for the making, of the test of the corn delivered to determine the percentage of waste; that plaintiff never offered to pay any defendant the contract price for *shelled* corn, and in the case of some defendants, would not allow the shelling of popcorn until winter; and that plaintiff approached

the owners of shelling machines and ordered them not to shell the corn of defendants.

Trial was to a jury; plaintiff and several witnesses testified in his behalf; then plaintiff called each of the defendants for cross-examination under the statute; and at the close of his case, defendants presented a motion to dismiss as to defendant Hough on the ground that plaintiff's evidence had disclosed nothing that would indicate that Hough knew anything about contracts made with plaintiff, or the names of the contracting parties or that he approached any of the codefendants in an attempt to interfere with their performance of their individual contracts, and that he did not conspire with the other defendants in any manner to prevent the fulfillment of their contracts. The motion as to the other defendants generally was upon the ground that it appeared from the evidence that plaintiff breached the contract in three ways, in that he ordered delivery of the popcorn to a place or places different than that designated for delivery in the contract; that he did not, in some instances, and would not, in any instance, receive *shelled* popcorn, and finally that he failed to make provision for the testing of the corn as provided in the contract.

This motion was sustained by the court and the jury dismissed. By the specification of points set out, it is claimed that the court erred in dismissing the complaint at the conclusion of plaintiff's evidence, for the reason that a prima facie case had been made, and that the evidence presented, and the admissions made by defendants, disclosed liability on their part as a matter of law.

Plaintiff attached to his complaint Exhibit A, which is a copy of the written contract executed on the 12th day of February 1944, between William Langhurst, one of the defendants, and plaintiff. This copy is identical with the copies of contracts with each of the other defendants, with the exception as to date and the amount of acreage. None of the contracts contained a description of the acreage to be planted. Exhibit A is as follows:

"This agreement made and entered into this 12 day of Feb., 1944, by and between V. Guardamondo of Pueblo, Colorado, party of the first part, and W. N. Langhurst of Sugar City, in County of Crowley and State of Colorado, party of the second part.

"Witnesseth: That whereas, party of the second part agrees to grow and properly cultivate for the party of the first part in the year 1944, 24 acres of South American Jumbo Popcorn on the following real estate, in Crowley county, Colorado: . . .

"Now, therefore, in consideration of One Dollar in hand paid, the receipt of which is hereby acknowledged, first party agrees to furnish to second party all Popcorn Seed to be used in the growing of the acreage of Popcorn heretofore mentioned at 12 cents per pound (price of seed to be settled for at the time of making this agreement) and agrees to buy from second party all Popcorn raised on above acreage heretofore mentioned at the price of $6.00 per cwt. shell, delivered by the second party to the farm of the first party in St. Charles Mesa, Pueblo, Colorado, when fit for safe cribbing, upon first party's orders between November 1, 1944, and the 2 day of Feb., 1945.

"That in consideration of the foregoing on the part of the first party the second party agrees to and does sell to the first party all Popcorn raised upon said acreage free from all encumbrances, sound, free from moldy, damaged or frost bitten corn, and reasonably free from husks and silk and of merchantable quality, with a popping test of 24 to one or better. First party agrees to pay for above specified corn within ten days after delivery and after being inspected and found to be in specified condition, it being understood that the first party has the optional right of refusing the delivery of Popcorn until it has a moisture content of 18% or less, because popcorn that is wet may rot and mold when piled up. It is further agreed that where Popcorn delivered by the second party is not reasonably clean and free from unmatured Popcorn, for-

eign matter, and husks, first party is to weigh 100 pounds and then shuck and clean Popcorn of foreign matter in order to determine the percentage of waste, and it is agreed that this percentage of waste will constitute dockage.

"First party gives no warranty expressed or implied as to the description, quality or productiveness of said seed furnished and is in no way responsible for the crop.

"It is also understood and agreed between the parties hereto that no other acreage of Popcorn of the same variety as mentioned in this agreement be grown on these premises, and if additional acreage of the same variety is grown, it becomes part of this agreement at the option of the first party.

"Executed in triplicate the day and year first above written.

"V. Guardamondo                    Wm. Langhurst
    First Party                              Second Party"

Plaintiff's exhibit S apparently is a letter, copies of which were mailed to each of the defendants according to the sworn testimony of the stenographer. This letter is dated January 18, and was mailed January 22, 1945. The stenographer testified that she had a list of the names and addresses of the farmers to whom plaintiff addressed the letter and that she accompanied plaintiff to the postoffice and mailed the letters in his presence. The letter is as follows:

"Dear Sir:

"Heretofore you have entered into a written contract to furnish me with popcorn seed at a stated price. In the written contract it was agreed that delivery would be made by you to my place in St. Charles Mesa, Pueblo, Colorado, when fit for cribbing.

"I have made arrangements with the following three firms to handle the popcorn seed that you have grown for me: Robinson Grain Company, Ordway, Colorado; Farmer's Grain and Bean Association, Fowler, Colorado; Charles Bell, Boone, Colorado. This has been done so as

to make it easier for you to make delivery and with less time and expenses to you.

"Heretofore I have requested you orally to make delivery. In case you have not delivered as yet, please consider this an additional demand for delivery to me at the places above selected for your convenience.

"I will soon be at your farm; and if I am not there within the next two or three days, you can communicate with me at my place of business, R.R. 1, Box 172, Pueblo.

"Yours very truly,

"V. Guardamondo"

Eleven of the defendants were called by plaintiff and testified on cross-examination. Little would be accomplished by detailing the testimony of each of these defendants. Material here, is the general substance of their testimony, which is to the effect that they admitted entering into separate, written contracts with plaintiff; that they did not receive the letter hereinbefore set out; that some of them delivered all of their corn to Hough, others delivered far more corn to Hough than to plaintiff, while some delivered no corn at all to plaintiff; that during the popcorn season, plaintiff saw most of them, talked with them, and told them about making deliveries to places other than that named in the contract; plaintiff testified that he told them to deliver wherever it was most convenient for them, but all defendants denied that plaintiff said anything about convenience; one defendant testified that he took 2,500 pounds of corn to plaintiff's place and when plaintiff saw it and refused to take it, that he then took this corn to Hough, and it is alleged in the complaint that he delivered 9,655 pounds to Hough. So far as can be determined from his testimony, the corn he attempted to deliver to plaintiff was not merchantable corn and was full of waste. One defendant delivered 20,023 pounds to Hough, 15,300 to plaintiff; another, 7,097 to Hough, 990 pounds to plaintiff; and another, 8,200 pounds to Hough and 900 pounds to plaintiff. According to the schedule set out in plaintiff's complaint, the other eight defendants

delivered to Hough a total of 76,841 pounds of corn, and none to plaintiff. Only one of the defendants testified that he attempted to make a delivery according to contract to the place designated in the contract. In most instances, where defendants delivered any corn whatever to plaintiff, it was after they had made deliveries to Hough.

On the whole, it may be said that plaintiff never refused to accept delivery of the popcorn which he claims was to be reasonably free from damaged corn and husks and other waste and be of merchantable quality. All of the corn delivered to Hough was at the rate of $8.75 per hundred. It cannot clearly be determined from the evidence that plaintiff informed Hough of the existence of his contracts with defendants, although Hough testified he knew nothing about the contracts; in all he purchased in excess of 140,000 pounds of popcorn which had been contracted to plaintiff. Notwithstanding this conflict and other conflicts in the testimony, it would appear that plaintiff had made out a prima facie case, and his complaint should not have been dismissed.

Much argument or discussion throughout the entire case related to the difference between shelled corn and cleaned or processed corn. Whatever may be defendants' contention, it is clear that it was provided in the contract that the defendant in each instance agreed to sell all popcorn raised upon the acreage mentioned which was "sound, free from moldy, damaged or frost bitten corn and reasonably free from husks and silk and of *merchantable* quality, * * *." Defendants claim that plaintiff breached the contracts in three respects: (1) That he refused to receive, accept and pay for *shelled* corn; (2) that he ordered delivery of the popcorn to a place or places different or other than the place or places designated for delivery in the contract; (3) he failed to test any of the corn as specified in the contracts. With one exception, there is no evidence that plaintiff refused to receive or accept or to pay for popcorn he contracted to

purchase from defendants. It does appear from the testimony of defendants that in some instances they delivered their entire crop to Hough before the expiration of the time in which plaintiff could demand delivery. Defendants make mention of the matter concerning the change of place of delivery; however, there is no evidence that they attempted to deliver to the place named in the contract, or that acceptance was refused. The entire testimony of defendants is shrouded with avoidance of compliance with the contract and, while they contend that plaintiff breached the contracts by changing the place of delivery, they all testified to the effect that they never received the letter which the testimony shows was mailed to at least some of them; neither does the evidence disclose that defendants refused to make delivery because they were not being paid full and just prices for merchantable corn.

A clear inference can be had from all of the testimony in the case, that there was a "black market" in popcorn at the times here involved. Whether or not defendants sought to avoid the strict terms of their contracts and take their chances on a higher price is clearly a question that plaintiff was entitled to have submitted to a jury. The fact that apparently all the defendants in some way knew they could take their corn to Hough, and did take it to him, coupled with the statement of plaintiff that he told Hough of the existing contracts, are circumstances to be considered by a jury on the conspiracy charge against Hough. In this case there is evidence of several instances where a defendant voluntarily made it impossible by his acts to perform the contract, and in some instances a clear inference that defendants did not intend to perform. To avoid liability, defendants should have maintained a contractural relationship until the expiration of the time for performance.

On the evidence as it now appears in the record, the liability of some of the defendants is apparent, unless met and overcome on full trial to a jury under proper

instructions. If liability as to any defendant is established, then the court or a master should compute the damage, if any, to plaintiff.

Pursuant to the views herein expressed, the cause is remanded with directions to reinstate plaintiff's complaint and proceed in accordance therewith.

MR. CHIEF JUSTICE JACKSON and MR. JUSTICE STONE concur in the result as to all defendants except Frank Hough.

MR. CHIEF JUSTICE JACKSON, MR. JUSTICE STONE and MR. JUSTICE CLARK dissent as to defendant Frank Hough.